
**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## IN THE MATTER OF THE APPLICATION FOR REGISTRATION OF TITLE TO ESTATE NO. 2959 (formerly a part of Estate No. 49) nka "LOT NO. 10191" MUNICIPALITY OF DEDEDO.

Supreme Court Case No. CVA22-004
Superior Court Case No. LR0005-19

## OPINION

## Cite as: 2023 Guam 6

Appeal from the Superior Court of Guam
Argued and submitted on February 22, 2023
Hagåtña, Guam

Appearing for Petitioner-Appellant:
Glenn B. Nelson, *pro se*
P.O. Box 181
Hagåtña, GU 96932

Appearing for Objector-Appellee
Bayview IV, LLC:
Mitchell F. Thompson, *Esq.*
Thompson Thompson & Alcantara, P.C.
238 Archbishop Flores St., Ste. 801
Hagåtña, GU 96910

Appearing for Objector-Appellee Blue Ocean
Development, LLC:
Jon A. Visosky, *Esq.*
Roberts Fowler & Visosky, LLP
865 S. Marine Corps Dr., Ste. 201
Tamuning, GU 96913

**E-Received**
7/18/2023 10:19:32 AM

BEFORE: F. PHILIP CARBULLIDO, Presiding Justice; ALEXANDRO C. CASTRO, Justice *Pro Tempore*; and JOHN A. MANGLONA, Justice *Pro Tempore*.

**CARBULLIDO, P.J.:**

[1]    Petitioner-Appellant Glenn B. Nelson appeals the grant of summary judgment by the Superior Court. He argues there are genuine issues of material fact, and therefore, his case should proceed to trial. He focuses on the fact that no previous court case explains how Estate 2959 became part of current Lots 10113-3 and 10113-R3. However, as pointed out by Objectors-Appellees Bayview IV, LLC and Blue Ocean Development, LLC ("Objectors"), at this stage, the questions before this court are simply whether Glenn Nelson's current Petition was properly filed and whether *res judicata* applies.[1] It was not, and *res judicata* does apply. Therefore, the decision of the Superior Court finding the same must be affirmed.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

[2]    This dispute began in 1978 when Calvo's Insurance filed an application to register a tract of land in Tumon (Case No. LR0017-78). This land was known as Lot 10113-R2, and it was later subdivided into separate lots, Lot 10113-3 and Lot 10113-R3. Unmentioned in this action was

---

[1] At the same time, we note Glenn B. Nelson (hereinafter, "Glenn") has been a zealous advocate for his cause. We commend his meticulous research conducted on behalf of the Espinosa Estate and his performance in oral arguments. He may even be correct in asserting that over 40 years ago, some land belonging to the Espinosa Estate was wrongfully registered to a different party. However, we are a court of law and are constrained by principles of law. Accordingly, we can address only the questions and issues that are properly before us.

[2] In their briefings, Objectors-Appellees argue that this court "should put an end to this vexatious litigation." Appellees' Br. at 22 (Aug. 19, 2022). The term "vexatious litigation" has come to be something of a term of art referring to suits filed by "those persons who persistently and habitually file lawsuits without reasonable grounds, or who otherwise engage in frivolous conduct in the courts." *Validity, Construction and Application of State Vexatious Litigant Statutes*, 45 A.L.R. 6th 493, 514 § 2 (2009). This does not describe Glenn, and it would be incorrect to label his efforts as vexatious at this time.

Estate 49, the land to which Glenn Nelson (hereinafter, "Glenn")[3] is laying a claim.[4] Estate 49,[5] as defined by Glenn, is made up of land now contained in Lots 10113-3 and 10113-R3. The decree in the 1978 land registration case was never appealed and has become the law of the case.

[3]  Decades later, Theodore Nelson (hereinafter, "Theodore"), father to Glenn, filed a Motion to Reopen the Estate of Juan De Torres Espinosa, Sr. (Case No. PR0193-48), claiming ownership of Estate 49 ("Probate Action"). The Superior Court denied this motion, finding that Theodore "fail[ed] to establish a claim of ownership and . . . that Bayview and Hanil Development (Blue Ocean's predecessors [in interest]) were bona fide purchasers for value of the property." Record on Appeal ("RA"), tab 62 at 3 (Dec. & Order, Feb. 1, 2022). This decision was never successfully appealed.[6]

[4]  Shortly after the Decision and Order in the Probate Action was issued, Objectors (or, in the case of Blue Ocean, its predecessor in interest) became involved in a civil action (Case No. CV0779-08) to quiet title on their tracts of land ("Quiet Title Action"). In that action, Theodore disclaimed any interest on Bayview's tract (Lot 10113-3), and the court found that "[Theodore] Nelson's claim to Lot 10113-R3 [Blue Ocean's tract] was barred by the Guam Land Title

---

[3] While normally the court refers to individuals by their surnames, to avoid confusion in this case where multiple individuals share the same surname, the court will refer to them by their given names.

[4] He is claiming an interest in the land acting as an administrator of the Estate of Juan De Torres Espinosa, Sr. Appellant's Br. at 3-4 (July 25, 2022).

[5] To be more precise, Glenn is claiming ownership of Estate 2959, which was formerly a part of Estate 49. Appellant's Br. at 3. As "Estate 49" was used in the prior actions cited later in this Opinion, we use that term. While true that Estate 49 is technically different than Estate 2959, the latter is land found entirely in the former; this is to say, all land Glenn is claiming that is a part of Estate 2959 would also have been a part of Estate 49. *See* RA, tab 1 (Pet. Reg. Title Land, Ex. 6, Sept. 18, 2019); *see also* RA, tab 33 at 10-11 (Decl. Cecille A. Flores, May 14, 2021). Therefore, the relevant claims made below about Estate 49 are also applicable to Estate 2959.

[6] A Notice of Appeal was filed in this case, but it was premature, so this court dismissed the appeal for lack of jurisdiction. In re Estate of Espinosa, CVA07-016 (Order at 2 (Nov. 1, 2007)). No proper appeal was ever filed. RA, tab 62 at 3 n.2 (Dec. & Order, Feb. 1, 2022).

Registration Act." RA, tab 62 at 4 (Dec. & Order) (citation omitted). No appeal was taken in the Quiet Title Action.

[5]     The present case began when Glenn filed a Petition for Registration of Title of Land on September 18, 2019. A few months later, Objectors filed an objection to Glenn's proposed land registration. After discovery had closed, Objectors moved for summary judgment, arguing the Petition did not conform to 21 GCA § 60509 and the land in question had been adjudicated as belonging to Objectors (or the predecessors in interest) by the courts of Guam.

[6]     Glenn does not appear to have ever responded to the statutory argument at the trial court level. As for the *res judicata* argument, Glenn argued there was no final judgment on the issue he is now raising and there is no privity between him and the parties involved in the past cases.

[7]     The trial court agreed with Objectors on both counts. First, it found that Glenn's Petition did not conform to 21 GCA § 60509 because the map attached to his petition was over four years old instead of the one-year maximum set by statute. Though that could have ended the dispute, the court addressed the *res judicata* argument. The court found there had been final judgments on the same issues involving Glenn or parties in privity with him. Accordingly, it granted the Objectors' motion for summary judgment determining that Glenn was estopped from asserting a claim over the land at issue. This appeal followed.

## II. JURISDICTION

[8]     This court has jurisdiction over an appeal from final judgment. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 118-7 (2023)); 7 GCA §§ 3107, 3108(a) (2005). In a motion and in their briefing, Objectors argued this court did not have jurisdiction to rule on this case. Specifically, Objectors contend that Glenn appealed only the trial court's Decision and Order and not the final judgment which followed a few days later. Appellees' Br. at 1-2 (Aug. 19, 2022). In

Objectors' view, Glenn appealed an interlocutory order, and this matter should have been dismissed.

[9] A final judgment disposes of the case by determining the rights of the parties in an action. *Marriott v. Marriott*, 2014 Guam 28 ¶ 7; 7 GCA § 21101 (2005) ("A judgment is the final determination of the rights of the parties in an action or proceeding."). For a judgment to be considered final, it must be "set forth on a separate document" as required by Guam Rule of Civil Procedure 58(a). Guam R. Civ. P. 58(a)(1). It is this separate document from which parties are required to appeal. However, as discussed by the U.S. Supreme Court:

> "[I]t must be remembered that the [separate document] rule is designed to simplify and make certain the matter of appealability. It is not designed as a trap for the inexperienced. . . . The rule should be interpreted to prevent loss of the right of appeal, not to facilitate loss."
>
> The Federal Rules of Civil Procedure are to be "construed to secure the just, speedy, and inexpensive determination of every action."

*Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 386-87 (1978) (per curiam) (first and third alterations in original) (citations omitted).

[10] Importantly, this court "takes into account the public policy favoring disposition of a case on its merits." *Quitugua v. Flores*, 2004 Guam 19 ¶ 20. As such, this court looks to Glenn's *intent* in filing his appeal, and we find his intent sufficient to proceed with the appeal of the final judgment.

[11] In *Ward v. Reyes*, this court considered whether a Rule 59 motion could be treated as an appeal of the underlying judgment. 1998 Guam 1. The appellant in *Ward* filed a timely notice of appeal designating only the order denying a motion for reconsideration as the basis of the appeal. *Id.* ¶¶ 5-6. The *Ward* court looked to the Ninth Circuit for guidance on jurisdiction and reasoned:

> In certain situations, the Ninth Circuit treats a Rule 59 motion as an appeal of the underlying judgment. *Wash. State Health Facilities, Ass'n v. Dep't of Social*

> *& Health Servs.*, 879 F.2d 677, 681 (9th Cir. 1989). This is appropriate where there is no prejudice and it could be fairly inferred that the Appellant had intended to appeal the judgment. *See id.* at 681; *Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1481 (9th Cir. 1986).

1998 Guam 1 ¶ 6. This court held that the specific facts of *Ward* warranted considering the "appeal of the order . . . as an appeal also of the underlying judgment." *Id.* ¶ 7.

[12]    Here, it can be "fairly inferred" that Glenn intended to appeal the final judgment, and the court may consider the appeal of the order as such. The February Decision and Order granting summary judgment disposed of all issues, so there are no other issues for Glenn to appeal. Further, the final judgment simply reduced the content of the February Decision and Order to a separate document, which Glenn did not designate as the basis for his appeal. To dismiss Glenn's appeal on this basis would be to "facilitate loss." *Bankers Tr.*, 435 U.S. at 386. We find that dismissal would not serve the purpose of Rule 58, and we decline to use the rule to "trap" a self-represented litigant.

[13]    Glenn's intent to appeal the final judgment was clear, and this court has discretion over whether Glenn's failure to use the word "judgment" is fatal to his appeal. We conclude it is not, and that Glenn has sufficiently shown his intent to appeal the final judgment. We thus have jurisdiction to proceed with this case.

## III.  STANDARD OF REVIEW

[14]    The standard for reviewing a grant of summary judgment is *de novo*. *Hawaiian Rock Prods. Corp. v. Ocean Housing, Inc.*, 2016 Guam 4 ¶ 13 (citations omitted). "A trial court's conclusions of law are also reviewed *de novo*." *Id.* (citing *Mendiola v. Bell*, 2009 Guam 15 ¶ 11). Finally, issues of statutory interpretation are likewise reviewed *de novo*. *People v. Robert*, 2019 Guam 2 ¶ 5.

## IV.  ANALYSIS

### A.  Glenn's Petition Fails to Conform to 21 GCA § 60509

[15]     Title 21 GCA § 60509 is clear that any "document purporting to establish title to land as a result of proceedings under the Land Title Registration Act [must be] . . . accompanied by a map, plat, sketch or other plane pictorial representation of the lot, parcel or tract of land involved, made within a *one year* period preceding presentation for filing."  21 GCA § 60509 (2005) (emphasis added).  The trial court noted the map accompanying Glenn's Petition was made in 2014, four years before he filed his Petition.  Glenn does not dispute this; he argues only that in the past, this requirement may not have been stringently enforced by the Department of Land Management.  Appellant's Reply Br. at 25-26 (Oct. 21, 2022).

[16]     Whether the Department of Land Management is consistent in carrying out its statutory mandate or not does not excuse Glenn's present failure.  Perhaps unfair, the issue was properly raised before the Superior Court.  As he does not dispute his Petition fails to conform to 21 GCA § 60509, the decision of the Superior Court can be affirmed on these grounds alone.  However, such a decision would allow this case to be refiled with the exact same facts, simply with a more recent map.  In the interests of judicial economy and in recognition of the efforts of Glenn in litigating this matter, we will also address the substantive issue of *res judicata* rather than only affirming on a narrow, technical basis.

### B.  *Res Judicata* Estops Glenn from Litigating Ownership of the Property at Issue

[17]     "Res judicata embraces two doctrines, claim preclusion and issue preclusion."  *Reyes v. First Net Ins. Co.*, 2009 Guam 17 ¶ 20.  This case implicates claim preclusion, which is "where a rendered judgment is the full measure of relief accorded between the same parties for the same claim."  *In re San Nicolas*, 2022 Guam 8 ¶ 28 (citing *Reyes*, 2009 Guam 17 ¶ 20).  The elements

to find a claim is precluded are: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and later suit, and (3) an identity of the parties or their privies in the two suits." *Id.* ¶ 26 (citation omitted). These elements shall be discussed in turn regarding the Probate Action and the Quiet Title Action, the cases most on point to give preclusive effect.

### 1. There have been final judgments on the merits in earlier suits

[18] The last Decision and Orders of the Superior Court in the Probate Action and the Quiet Title Action disposed of all the issues relating to those actions. This means that the trial judges in those cases addressed all the questions that were adequately put before them. No proper appeals were taken, and it is now well past the deadline to appeal civil cases. *See* Guam R. App. P. 4(a)(1) (setting a thirty-day deadline). Since there are no ongoing issues in those cases, and it is now too late to appeal those cases, the judgments in the Probate Action and the Quiet Title Action are final and on the merits. *See In re San Nicolas*, 2022 Guam 8 ¶ 29.

### 2. The causes of action in the past suits and the present suit are identical

[19] "The central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Reyes*, 2009 Guam 17 ¶ 26 (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001)); *see also Gospel Missions of Am. v. Los Angeles*, 328 F.3d 548, 555 (9th Cir. 2003) (quoting *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992)) (providing four questions to identify redundant claims).

[20] Here, the same transactional nucleus of facts has governed the Probate Action, the Quiet Title Action, and the present case—do the owners of Lots 10113-3 and 10113-R3 have superior title to the Espinosa Estate? In the Probate Action, the trial court held "that no grounds exist to

include a claim of ownership to Estate 49 in the Estate of [Espinosa]." RA, tab 36 (Mem. Supp. Mot. Summ. J., May 14, 2021), App. 5 at 6 (PR0193-48 Dec. & Order, Aug. 8, 2007). In the Quiet Title Action, the court noted that Theodore did not make a claim to Lot 10113-3 and so quieted title of the lot in favor of Bayview against Theodore. RA, tab 36 (Mem. Supp. Mot. Summ. J.), App. 7 at 4 (CV0779-08 Dec. & Order, Oct. 27, 2011). It also quieted title of Lot 10113-R3 in favor of Blue Ocean's predecessor-in-interest against Theodore. RA, tab 36 (Mem. Supp. Mot. Summ. J.), App. 8 at 7 (CV0779-08 Dec. & Order, Feb. 1, 2013).

[21]     True, it does not appear that past court decisions have ever explained how Estates 49 or 2959 became a part of Lots 10113-3 and 10113-R3. This does not prevent those cases from applying to this one. For one, Estate 49 is comprised of land wholly within the current boundaries of Lots 10113-3 and 10113-R3. *See* RA, tab 1 (Pet. Reg. Title Land, Ex. 6, Sept. 18, 2019); *see also* RA, tab 33 at 10, 16 (Decl. Cecille A. Flores, May 14, 2021). Second, in these past cases, the Superior Court has clarified that the current owners of Lots 10113-3 and 10113-R3 (or the predecessors-in-interest) have superior title to a claim by the Nelson family acting as administrators of the Espinosa Estate.

[22]     Glenn or his father would have needed to present evidence on the title to Estate 49 in the earlier court actions or else give an exceptionally good reason as to why this new evidence should be accepted now. "*Res judicata* 'prevents litigation of a claim that was not litigated in a previous suit, but *could have been*.'" *In re San Nicolas*, 2022 Guam 8 ¶ 34 (second emphasis added) (quoting *Zahnen v. Limtiaco*, 2008 Guam 5 ¶ 10). Moreover, "[r]es judicata applies even where new claims are based on newly discovered evidence, unless 'the evidence was either fraudulently concealed or it could not have been discovered with due diligence.'" *L-Tec Elecs. Corp. v. Cougar*

*Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) (per curiam) (quoting *Saud v. Bank of N.Y.*, 929 F.2d 916, 920 (2d Cir. 1991)).

[23]    The basis for Glenn's current claim appears to be a property map detailing Estate 2959 (formerly a part of Estate 49) showing the coordinates for the property and stating the property was held by Juan Espinosa Torres. Appellant's Br. at 3 (July 25, 2022). He also focuses on the fact that Estates 49 and 2959 have never been registered with the Department of Land Management. *Id.* at 7. He further tries to provide the paper trail detailing the events surrounding the land going as far back as the late 19th century. Reply Br. at 7-8. None of these points supports a finding that this evidence was "fraudulently concealed" or undiscoverable with due diligence at the time of the previous cases. Therefore, any new evidence or legal arguments from Glenn are insufficient for preventing *res judicata* from applying in the present case.

### 3.    Glenn is in privity with his father, Theodore, who was a party in the past cases

[24]    Glenn was not a party in either the Probate Action or the Quiet Title Action. His father, Theodore, was. In the Probate Action, Theodore was acting on behalf of the Espinosa Estate. Objectors assert, and Glenn does not dispute, that Theodore was also involved in the Quiet Title Action in his capacity representing the Espinosa Estate. Appellees' Br. at 20. Here, Glenn is involved in this proceeding because of the Espinosa Estate. Appellant's Br. at 4. "Privity . . . is established when a party's interests are fully congruent with a party to the judgment, having an identity of interest that the party to the judgment represented the same legal right, or a mutual or successive relationship to the same right of property." 50 C.J.S. *Judgments* § 920 (May 2023 Update) (footnotes omitted). As the trial court correctly observed, "[t]he litigant is the Espinosa Estate, regardless of who brings the action in its name." RA, tab 62 at 13 (Dec. & Order). This criterion is satisfied.

[25]    Since all the elements of claim preclusion are met, the Probate Action and the Quiet Title Action have preclusive effect to the present case. Past cases have shown that Objectors have superior title than the Espinosa Estate to the land in question, and there is no reason to disturb that finding. Glenn is barred by *res judicata* from claiming an interest in the land occupied by Objectors.

## C. Given its Current Posture, this Court Cannot Reverse Past Decisions of the Superior Court

[26]    Glenn argues this case "is a fight to right the wrong of past . . . [sic] to get back what was wrongfully taken from the [Espinosa] Estate." Reply Br. at 25. He also states that "[c]ourts make mistakes. Decades old cases are being overturned." Appellant's Br. at 11. Old cases can be overturned, but only in the right circumstances.

[27]    Typically, when we reverse decisions of the Superior Court, we do so in an appeal from that specific case. Neither the original 1978 land registration case, nor the Probate Action, nor the Quiet Title Action were ever successfully appealed. The time to correct any mistake was while they could still be appealed; that time has gone. This means those decisions are now final, and we are constrained by the doctrine of *res judicata*. When considering whether *res judicata* applies, we do not look to see if the past cases were right.

[28]    To clarify, nowhere in this Opinion do we determine if the past decisions of the Superior Court were correct. We can even assume they were wrong. We can assume that Glenn is correct that Estate 2959, formerly a part of Estate 49, was wrongfully subsumed into Lot 10113-R2 back in 1978. Even with this assumption, we cannot reverse the past decisions of the Superior Court. Nothing in the analysis of Part IV.B of this Opinion would change, and so those decisions, even if they were wrong, must be allowed to stand.

**[29]** We appreciate how frustrating this can seem to Glenn and his family. However, the concept of finality is crucial for the proper functioning of the judicial system. *See Rojas v. Rojas*, 2007 Guam 13 ¶¶ 12-13. At some point, cases must end, and parties must know—with certainty— what their rights and obligations are under the law. Under this principle, this court cannot disturb the past decisions of the Superior Court.

## V. CONCLUSION

**[30]** Though the history and facts involving the pieces of property in this case are confusing and murky, the questions of law this court faces are straightforward. The Petition for Registration of Title of Land filed by Glenn Nelson in the Superior Court did not conform to statutory requirements. Further, his claims have been litigated in several past court actions; the doctrine of *res judicata* applies. The grant of summary judgment by the Superior Court is **AFFIRMED**.

/s/
ALEXANDRO C. CASTRO
Justice *Pro Tempore*

/s/
JOHN A. MANGLONA
Justice *Pro Tempore*

/s/
F. PHILIP CARBULLIDO
Presiding Justice